IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| JAMES SAMUEL KUYKENDALL,<br><br>Plaintiff,<br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | NO. 9:20-CV-00221-TH |

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

The Plaintiff, James Samuel Kuykendall ("Kuykendall") requests judicial review of a final decision of the Commissioner of Social Security Administration with respect to his application for disability insurance benefits under Title II of the Social Security Act. This action is before the undersigned United States Magistrate Judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.[1] The undersigned finds that the administrative law judge's decision lacks reversible error and is supported by substantial evidence, and therefore recommends affirming the decision denying benefits.

**I.   JUDICIAL REVIEW**

United States district courts may review decisions of the Commissioner of the Social Security Administration. 42 U.S.C. § 405 (2018). The scope of judicial review is limited, however, to determining whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th

---

[1] General Order 05-06 refers civil proceedings involving appeals from decisions of the Commissioner of Social Security Administration to magistrate judges serving the divisions where the cases are filed. *See also* 28 U.S.C. § 636(b)(1)(B)(2009) and Loc. R. CV-72 for the Assignment of Duties to United States Magistrate Judges.

Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). When the Commissioner applies proper law and his decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also* 42 U.S.C. § 405(g).

Reviewing courts, therefore, give the Commissioner's decisions great deference. *Leggett,* 67 F.3d at 564. Courts may not re-weigh evidence, try issues de novo, or substitute their judgments for those of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance. *Elfer v. Texas Workforce Commission*, 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary"). Rather, it is for the Commissioner to weigh evidence and resolve conflicts. *See Anthony*, 954 F.2d at 295; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

When the Commissioner fails to apply correct principles of law, or when "substantial evidence"[2] does not support the Commissioner's decision, the governing statute authorizes a reviewing court to enter, upon the pleadings and the transcript of the record, a judgment modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. *See* 42 U.S.C. 405(g). Thus, courts have power to remand for further administrative proceedings, or they may direct the Commissioner to award benefits without a rehearing. Ordinarily, courts remand for further administrative proceedings

---

[2] "Substantial evidence" is a term of art meaning more than a scintilla but less than a preponderance. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). Evidence is "substantial" when relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Marcello v. Bowen*, 803 F.2d 851, 853 (5th Cir. 1986) (citing *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983)).

to address and cure deficiencies. *See, e.g., Newton v. Apfel*, 209 F.3d 448, 460 (5th Cir. 2000).

## II.  BACKGROUND

### A.  Procedural History

Kuykendall filed his application for Disability Insurance Benefits in April 2019, alleging he had been unable to work since June 28, 2012.[3] (Tr. 14, 150-51.) Kuykendall submitted a disability report to the agency on or about June 11, 2019, and listed the following conditions: migraine headaches, a lumbar spine problem, sciatica, kidney disease, diabetes mellitus, high blood pressure, sleep apnea, depression, a breathing problem, and high cholesterol.[4] (Tr. 169.) The Disability Determination Services (DDS) for the State of Texas denied Kuykendall's application initially and on reconsideration (concluding that the medical evidence in file is insufficient to establish diagnosis prior to date of last insured), and Kuykendall requested a hearing before an administrative law judge ("ALJ"). (Tr. 66-81, 95-96.) Represented by legal counsel, Kuykendall appeared and testified at the hearing before ALJ William Sharp on April 28, 2020. (Tr. 31-65.) A vocational expert also appeared and testified at the hearing. (Tr. 56-64.) On June 2, 2020, ALJ Sharp issued the decision finding that Kuykendall had not been disabled on or before December 31, 2018 (his date of last insured ("DLI")).[5] Kuykendall requested review of the ALJ's decision by the Appeals Council, which was denied, thereby prompting this

---

[3]  At the administrative hearing, Kuykendall's counsel consented to amending the onset date to January 1, 2014. (Tr. 39.)

[4]  Relevant to his appeal, Kuykendall did not allege in the disability report that his left-foot bunion, toe-fusion surgery, dizziness, or irritable bowel syndrome caused any limitations on his ability to work. (Tr. 169.)

[5]  To prove entitlement to Title II Disability Insurance Benefits, a claimant must be insured and has the burden of showing he was disabled on or before the date he was last insured under Title II ("date last insured" or "DLI"). *See* 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. §§ 404.101, 404.130, 404.131, 404.315. At the hearing, Kuykendall amended his alleged onset of disability date to January 1, 2014. (Tr. 39-41.) The ALJ evaluated the disability claim using the original alleged onset date of June 28, 2012. (Tr. 14, 150.) Kuykendall was last insured under Title II on December 31, 2018 (Tr. 14, 195, 207), so the relevant period for a showing of disability is June 28, 2012 (or January 1, 2014 as amended at the hearing), through December 31, 2018.

appeal. (Tr. 2-5.)

### B. Factual History

Kuykendall was 48 years old at the time of his alleged onset of disability and was 55 years old when his Title II insured status expired. (Tr. 23, 39, 150, 195, 207.) He was self-employed as a swimming pool cleaner, at least through October 2013. (Tr. 16, 23, 36, 160.) This work constitutes "past relevant work."

### C. Administrative Decision and Appeal

As a threshold matter, ALJ Sharp determined that Kuykendall last met the insured status requirements of the Act on December 31, 2018. (Tr. 16.) He utilized the five-step sequential analysis model specified by regulations and approved by courts in reaching his decision denying Kuykendall's application.[6] At Step One, ALJ Sharp determined that Kuykendall engaged in substantial gainful activity from June 28, 2012 through October 31, 2013, but there was a continuous 12-month period after October 31, 2013 when he did not engage in substantial

---

[6] The five steps – with explanatory parenthetical commentary – generally are as follows:

1. The Commissioner ascertains *whether an applicant currently engages in substantial gainful activity*. (If so, a finding of non-disability is entered and the inquiry ends.)

2. The Commissioner determines *whether an applicant has a severe impairment or combination of impairments*. (If not, the inquiry ends and a finding of non-disability is entered.)

3. The Commissioner determines *whether any severe impairment(s) equals or exceeds those in a Listing of Impairments, 20 C.F.R. Subpt. P, Appendix 1* ("the Listings"). (If so, disability is presumed and benefits are awarded. If not, the analysis continues.)

4. The Commissioner determines *whether any impairment(s) prevents the claimant from engaging in regular previous employment*. (If so, a *prima facie* case of disability is established and the burden of going forward (to the fifth step) shifts to the Commissioner. *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).

5. The Commissioner determines *whether other work exists in the national economy which the applicant can perform*. (If so, the burden shifts back to the applicant to show he cannot perform the alternative labor. *See id.*; *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986); 20 C.F.R. § 404.1520(a)-(f) (2012)).

gainful activity. (Tr. 16.) At Step Two, ALJ Sharp found that Kuykendall had degenerative disc disease of the lumbar spine with sciatica, headaches, diabetes mellitus, obstructive sleep apnea, obesity, depression and an adjustment disorder that were "severe," meaning that these impairments interfered or would be expected to interfere with his ability to work for a twelve-month period (duration requirement). (Tr. 15, 16); *see Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985); 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). Relevant to the points of error raised by Kuykendall, ALJ Sharp determined that his left foot bunion was not a "severe" impairment. (Tr. 17.) ALJ Sharp determined at Step Three that Kuykendall's impairments were not presumptively disabling because they did not meet or equal the severity criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings). (Tr. 17.) At Step Four, ALJ Sharp assessed Kuykendall's residual functional capacity ("RFC") and determined he could perform the exertional demands of medium work, including:

- lift up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds; and

- stand or walk, off and on, for a total of approximately 6 hours in an 8-hour workday.

(Tr. 20); *see* 20 C.F.R. § 404.1567(c). ALJ Sharp determined that Kuykendall's capacity for medium work was further restricted, in that he:

- could climb ramps and stairs frequently, but never climb ladders, ropes, and scaffolds;

- could stoop and crouch frequently;

- must observe hazards precautions from heights, open flames, and dangerous machinery and exposed electrical currents;

- may need to alternate standing and walking versus sitting for 10 minutes in the morning and afternoon, in addition to the normal breaks;

- may need to use a rescue inhaler as needed;

- must avoid concentrated exposure to dust, gas, fumes, and industrial inhalant irritants;

- may need to take pain, anti-inflammatory, diabetes, and psychiatric medications while at work;

- have no more than frequent interaction with supervisors, and no more than occasional interaction with coworkers and the public; and

- can remain on task at a sustained rate of concentration, persistence and pace for at least 90 percent of the workday or, stated in the alternative, be off-task for up to 10 percent of the workday.

(Tr. 20.) Consequently, ALJ Sharp determined that Kuykendall could not perform his past relevant work as a swimming pool cleaner. (Tr. 23.) However, at Step Five, relying on the vocational expert's identification of representative occupations that an individual with Kuykendall's vocational profile and RFC could perform, he determined that Kuykendall was not disabled because there were a significant number of jobs in the national economy that he could perform (hand packager, warehouse worker, and/or dietary aide). (Tr. 23-25.)

### III.   POINTS OF ERROR

Kuykendall is proceeding *pro se* in this case. Therefore, the undersigned ordered the Commissioner to file the initial brief regarding any potential issues on appeal. The brief analyzes ALJ Sharp's findings at each step and asserts that substantial evidence supports the ALJ's decision that Kuykendall was not disabled prior to his DLI. (Doc. No. 19.)

Kuykendall filed his response brief claiming that certain medical evidence was not properly considered by ALJ Sharp. Namely, the disabling effect of his West Nile Virus diagnosed in 2012, "Hashimotos" diagnosed in 2019, dizziness, "breathing issues," chronic migraines, and "big toe fusion." He also disputes ALJ Sharp's finding that he can engage in

physical heavy lifting with frequent walking, bending, stooping, and stair climbing. (Doc. No. 23, p. 3.)

## IV.   DISCUSSION AND ANALYSIS

Kuykendall filed this federal action *pro se*, which imposes an additional layer of consideration for the court. As this and other courts have recognized, a lay plaintiff is unfamiliar with legal terms of art such as "substantial evidence" and lacks expertise in the rules governing Social Security regulations. *See Lockridge v. Colvin*, No. 3:12-CV-4135-BN, 2014 WL 1255745, at *3 (N.D. Tex. Mar. 27, 2014); *Washington v. Barnhart*, 413 F. Supp. 2d 784, 791 (E.D. Tex. 2006). Moreover, no statute, regulation, or court decision prescribes a precise analytical model for *pro se* actions seeking judicial review of adverse administrative decisions by the Commissioner. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 752 (E.D. Tex. 2005). Often, *pro se* litigants in Section 405(g) appeals invite the court to re-weigh the evidence and come to a different conclusion than did the Commissioner, which the court may not do. *See Washington*, 413 F. Supp. 2d at 791. Although courts must construe *pro se* pleadings and arguments liberally considering a party's lay status, they must also maintain their role as neutral and unbiased arbiters. *See Lockridge*, 2014 WL 1255745 at *3. Courts are not bound to "scour the record for every conceivable error," but fundamental fairness and interests of justice require that courts not disregard obvious errors, especially when a lay litigant's ignorance may cause legal errors to go unrecognized. *See id.* (citing *Elam*, 386 F. Supp. 2d at 753).

As an initial matter, Kuykendall must establish disability prior to his DLI—October 31, 2018. (*See* SSR 18-1p ("a claimant who has applied for disability insurance benefits under Title II of the Act must show that: (1) He or she met the statutory definition before his or her insured

status expired, and (2) he or she currently meets the statutory definition of disability, or his or her disability ended within the 12-month period before the month that he or she applied for benefits.")). Neither party challenges ALJ Sharp's finding that Kuykendall was last insured for Title II benefits on December 31, 2018.

### A.     Five-Step Sequential Analysis

The Defendant's brief follows ALJ's Sharp's five-step analysis and sets forth compelling arguments for affirming his decision. The undersigned finds that the most efficient way to evaluate this case is to do so chronologically as it applies to the five-step analysis. The claimant bears the burden of proof on the first four of the sequential analysis, while the Commissioner bears it on the fifth. *See Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999).

#### 1.   Step One: Substantial Gainful Activity

The first step requires the ALJ to determine whether the claimant is engaged in Substantial Gainful Activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his or her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step.

ALJ Sharp determined that Kuykendall engaged in substantial gainful activity from June 28, 2012 through October 31, 2013, but there was a continuous 12-month period after October

31, 2013 in which Kuykendall did not engage in substantial gainful activity.[7]  (Tr. 16.)  The parties do not argue against this finding, and there is no evidence to support a contrary finding.

### 2. Step Two: Severity of Impairments

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The claimant must show the impairment or combination of impairments is "severe," within the meaning of the regulations, meaning that it "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities are abilities and aptitudes necessary to do most jobs and include: (1) actions such as walking, standing, sitting, lifting, pushing, pulling, reaching, and carrying; (2) capacities for seeing, hearing, and speaking; (3) the ability to understand, carry out, and remember simple instructions; (4) use of judgment; (5) appropriately responding to supervision, co-workers, and usual work situations; and (6) coping with changes in a routine work setting.  20 C.F.R. § 404.1522(b). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities having no more than a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.5121, 416.921.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c).

The Commissioner defends ALJ Sharp's finding that Kuykendall has the following

---

[7] The record contains evidence suggesting Kuykendall worked beyond 2013. *See* (Tr. 798) (Kuykendall reported to VA doctor he could not participate in a weight management program "due to work."); (Tr. 36-37) (Kuykendall's hearing testimony that he might have worked a "small amount" in 2016).  However, whether or not Kuykendall worked after 2013 is immaterial because the undersigned adopts ALJ Sharp's findings that any post-2013 work did not rise to the level of SGA.

severe impairments: degenerative disc disease of the lumbar spine with sciatica, headaches, diabetes mellitus, obstructive sleep apnea, obesity, depression and adjustment disorder. (Tr. 15, 16.) Kuykendall claims ALJ Sharp erred at step two in not including conditions in his "nose (sinus) AND throat" that affect his breathing, dizziness, and pain caused by his bunionectomy (what he describes "big toe fusion"). (Doc. 23, p. 3-5.) He also argues that he suffers from a "fungal process" causing fluid buildup inside his head, which causes "headaches, confusion issues, memory . . . and weakness." (Doc. 23, p. 5.) In his brief, Kuykendall claims his West Nile Virus diagnosis in 2012 and "Hasimotos [sic]" diagnosed in 2019 also affected his ability to work, and that ALJ erred in not including these conditions at step two. (Doc. No. 23, p. 1.) He also testified that he suffers from chronic diarrhea and irritable bowel syndrome. (Tr. 52.)

Kuykendall is correct that ALJ Sharp did not include any breathing or sinus impairment at step two. However, Kuykendall bears the burden to demonstrate that his alleged breathing impairment is severe. 20 C.F.R. 404.1520(a)(4)(ii). Other than sleep apnea, which *is* included in the step two list of severe impairments and accounted for at step four of the analysis, Kuykendall's medical record is deplete of any identifiable breathing impairment. Instead, the medical record contains multiple notations wherein Kuykendall denied shortness of breath to his medical providers.[8] (Tr. 239, 242, 365, 368, 370, 372, 374, 376, 380, 384, 386, 389, 391, 434, 525.) He underwent pulmonary function testing on April 18, 2018, which showed normal spirometry, lung volumes, and diffusion capacity. (Tr. 334-335.) There are post-DLI treatment notes from Kuykendall's treating doctor, Brian F. Humphreys, M.D., documenting his self-reported "heavy sinus drainage" that cause "respiratory problems when sleeping" and a

---

[8] The only recent report of shortness of breath Kuykendall made to his treating physician was on May 29, 2019, even though he denied those same symptoms just one week earlier on May 21, 2019. (Tr. 234, 236.)

deviated septum. (Tr. 361-362, dated October 16, 2019.) However, Dr. Humphreys' treatment notes two months later, post DLI in December 2019, document no wheezing, sinus problems, or shortness of breath. (Tr. 365.)

Similarly, Kuykendall failed to demonstrate any objective impairment caused by dizziness, chronic diarrhea/irritable bowel syndrome, or toe pain, and the medical record does not support any limitation caused as a result of these conditions prior to DLI. Treatment notes following Kuykendall's bunionectomy with great toe fusion state he denied excessive pain and only had "intermittent" pain. (Tr. 878-890.) Medical evidence from the relevant period includes findings of normal strength and range of motion. (Tr. 384, 391, 639, 650-51, 623, 869.) Notably, Kuykendall did not include any physical limitations attributable to his toe fusion on his June 2019 disability report. (Tr. 169.)

To the extent that Kuykendall claims ALJ Sharp committed legal error at step two for not including "Hashimotos" or West Nile Virus, there is no evidence in the record that these conditions affected his ability to work prior to his DLI. Kuykendall also testified that he suffers from limitations attributable to diarrhea and irritable bowel syndrome, but again those limitations are not supported by the medical record. Accordingly, the undersigned finds that ALJ Sharp's identification of severe impairments at step two is supported by the evidence in the record.

However, even assuming *arguendo* that ALJ Sharp erred in not including some of Kuykendall's alleged impairments at step two, he accommodated for all of Kuykendall's physical and mental limitations—as supported by the evidence—at step four. As such, there is no error at this step. *See Reliford v. Colvin*, No. H121850, 2013 WL 1787650, at *13 (S.D. Tex. April 25, 2013) ("even if the ALJ's failure to make a specific severity finding regarding foot pain

was an error, it was harmless because he considered related limitations at subsequent steps of the disability analysis").

### 3. Step Three: The Listings

"The Listings" is a shorthand reference to Appendix I, Subpart P, Part 404 of the Regulations. That Appendix lists various impairments and indicators of their medical severity. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2004). Impairments found in "the Listings" are those that the Commissioner acknowledges are so severe that they automatically preclude substantial gainful activity. 20 C.F.R. § 416.920(d) (2012); S.S.R. 88–3c, 1988 WL 236022 (1988). Accordingly, the Listings function as a short-cut for claimants with impairments that render them *per se* disabled. *Barajas v. Heckler*, 738 F.2d 641, 644 (5th Cir. 1984) (stating that the "appendix relied upon by the district court is a listing of '*per se* disabilities' and should be used only if the claimant has satisfied the Secretary that [his] impairment is severe") (citing *Chico v. Schweiker*, 710 F.2d 947, 951 (2d Cir. 1983) and 20 C.F.R. § 404.1525(a), 416.920(d)). It is the claimant's burden to provide medical findings that support each of the criteria of a listed impairment. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).

ALJ Sharp considered Listings 1.00 (Ability to Ambulate), 3.09 (Chronic Hypertension), 4.02 (Chronic Heart Failure), 9.00 (Diabetes), 11.02 (Epilepsy, which is the most closely analogous listed impairment for headache disorder), and 12.02 and 12.04 (Mental Disorders).

Kuykendahl's impairments are not supported by clinical signs, symptoms, or laboratory findings that warrant a finding of a Listings-level impairment. Kuykendall does not raise any challenges to ALJ Sharp's Step Three findings, and review of the evidentiary record supports ALJ Sharp's findings, and therefore, the undersigned finds that no error was committed at step

three and that the determination is supported by substantial evidence.

####  4.   Step Four: Residual Functional Capacity and Past Relevant Work

Residual functional capacity ("RFC") is defined as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545 (2012). The Commissioner then utilizes this assessment in determining whether a claimant can still perform past relevant work (step four), or alternative available work as it is generally performed in the national economy (step five).

At this step, ALJ Sharp discussed the relevant evidence and ultimately found that Kuykendall had the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c) with additional limitations identified in Section II.(C.), *supra*. The Commissioner argues that ALJ Sharp committed no error in weighing the medical evidence and discounting Kuykendall's subjective complaints, and that the weight of the medical evidence constitutes substantial evidence for the ALJ's decision.

In reaching his decision, ALJ Sharp provided a detailed discussion of Kuykendall's subjective complaints and concluded that Kuykendall's allegations are not entirely credible for several reasons:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> The records detailed conservative care with minimal findings on examination and primarily medication management. The claimant presented with mostly retrained functioning on examination consistent with medium work [with additional limitations].

(Tr. 21.) ALJ Sharp supported this finding with citations to the medical evidence. Because

Kuykendall filed his claim for disability benefits after March 27, 2017, ALJ Sharp was required to evaluate the medical evidence in accordance with 20 C.F.R. § 404.1520c. This regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ will evaluate the persuasiveness of such opinions with supportability and consistency with other evidence in the record being the most important factors. 20 C.F.R. § 404.1520c(a)(2); *Frese v. Kijakazi*, No. 4:21-CV-103-JAR, 2022 WL 424902, at *6 (E.D. Mo. Feb. 11, 2022).

As for Kuykendall's alleged migraines and headaches, ALJ Sharp thoroughly analyzed and discussed VA medical records. Progress notes from Bonham VA Medical Center include a headache questionnaire from April 2013 (Tr. 664-667). This questionnaire documented Kuykendall's self-reported headaches on average of three days per week, usually lasting a few hours, attributable to poor sleep. (Tr. 665.) The notes state that he was noncompliant with prescribed medication. (Tr. 666.) Records from 2014 indicate that Kuykendall reported a twenty-five year history of migraines, but no history of medical treatment for the symptoms. (Tr. 851.) In April 2015, records state that Kuykendall reported the migraines are "constant for 25 years . . . they never go away." (Tr. 832.) However, despite doctor recommendations for restarting headache medications, Kuykendall declined. (*Id.*) ALJ Sharp noted that the medical records detail conservative care with minimal findings on examination that are consistent with his RFC determination. He also mentioned that while Kuykendall received a 50% disability Veteran's Affairs rating for migraines, the rating was not persuasive because the VA uses a different set of guidelines in assessing disability. (Tr. 23.)

ALJ Sharp discussed Kuykendall's limitations caused by sleep apnea, which causes shortness of breath, and concluded that he should not be exposed to pulmonary irritants. (*Id.*) In relation to his alleged dizziness and back pain, ALJ Sharp made several citations to the medical record, which substantiate his findings that Kuykendall is capable of a medium range of work (with limitations). (Tr. 21) (citing Tr. 605-701 (VA records showing some decreased motion, but intact strength and sensation, no muscle atrophy, normal spine examination, normal coordination, an ability to heel and tandem walk, and normal reflexes).

Regarding Kuykendall's mental impairments, ALJ Sharp acknowledged that the record contained "very little" indication of mental health treatment. (Tr. 22.) He noted that Kuykendall was diagnosed with adjustment disorder in 2015, and self-reported fatigue, low energy, and difficulties concentrating. (*Id.*) ALJ Sharp accordingly incorporated concentration limitations in the RFC.

Kuykendall has the burden of demonstrating the presence of limitations that must be incorporated in the RFC assessment. See 20 C.F.R. § 404.1520(e); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (claimant bears the burden of proof on the first four steps). The regulations require that he submit medical evidence establishing his RFC and impairments. 20 C.F.R. § 404.1520(a). There is no opinion evidence from a treating physician that Kuykendall suffered from a disabling condition that was expected to last more than twelve months prior to his DLI, and the four state agency physicians who evaluated Kuykendall's medical records all determined there was insufficient evidence to establish disability prior to DLI. (Tr. 67-81.) Accordingly, the undersigned finds that Kuykendall's statements about the intensity, persistence, and limiting effects of his symptoms prior to DLI are belied by the lack of contemporaneous

objective medical evidence or treatment, and that ALJ Sharp's opinion specifically addressed Kuykendall's allegations of pain and provide explicit and reasonable reasons for rejecting his testimony, and substantial evidence supports the RFC finding. Accordingly, there is no reversible error at this step.

     5. Step Five: Alternative Work

ALJ Sharp found at step five, with the support and testimony from the vocational expert, that Kuykendall is able to perform the following alternative jobs: hand packager, warehouse worker, and dietary aide. (Tr. 24.) The expert also testified that these jobs were available in significant numbers in the national economy. (*Id.*) A finding based on vocational expert testimony generally must be upheld by the court unless it is determined by erroneous predicate findings occurring earlier in the sequential analysis. *Elam v. Barnhart*, 386 F. Supp. 2d 746, 754 (E.D. Tex. 2005); *see also* 20 C.F.R. §§ 404.1566(d)-(e), 416.966(d)-(e). Such testimony constitutes substantial evidence when the hypothetical question asked of the vocational expert incorporates all disabilities that the ALJ has found, the disabilities recognized by the ALJ are reasonable under the evidence, and the ALJ's ultimate determination is consistent with the expert vocational testimony. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). Accordingly, the undersigned finds that substantial evidence supports ALJ Sharp's decision at this step and the step-five finding is free from legal error.

## V.   CONCLUSION AND RECOMMENDATION

Central to his appeal, Kuykendall bears the ultimate burden of proving entitlement to benefits. 20 C.F.R. § 404.1512(a); *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558 (6th Cir. 2022) (". . . while the ALJ must ensure that every claimant receives a full and fair hearing, the ultimate

burden of proving entitlement to benefits lies with the claimant.") (internal citation omitted).  A claimant is not entitled to Disability Insurance Benefits unless he can demonstrate that his disability existed prior to the expiration of his insured status. 20 C.F.R. § 404.131(b).  ALJ Sharp concluded that the evidence does not establish a medically determinable impairment prior to Kuykendall's DLI.  Having reviewed the entire record—including the transcript of the underlying proceedings, the relevant medical records, and the ALJ's written ruling—the undersigned finds that the ALJ's determination is supported by substantial evidence in the record.  So long as the Commissioner's determination is supported by substantial evidence, it must be affirmed, even if the record arguably could justify a different conclusion. Social Security Act § 205, 42 U.S.C.A. § 405(g).   Consequently, the administrative decision should be affirmed.

## VI. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation.  Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report.  *See* 28 U.S.C. § 636(b)(1)(c) (2009); FED. R. CIV. P. 72(b)(2).  A party who objects to this report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1) (2009); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States

District Judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 7th day of September, 2022.

_____
Zack Hawthorn
United States Magistrate Judge